IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO: 2:23-cr-58-001 |
| v. | : | JUDGE MORRISON |
| BENJAMIN D. RUCKEL, | : | |
| Defendant. | : | |

**SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE DOWNWARD TO THE ADVISORY GUIDELINES OF DEFENSE COUNSEL ON BEHALF OF BENJAMIN D. RUCKEL**

*Introduction*

Benjamin Ruckel is 26 years old. He was born in Columbus, Ohio and has remained in central Ohio his entire life. His father, Greg Ruckel is 55 years old and is employed by the National Auto Acceptance Corporation and deals with auto loans. His mother is Donna Ruckel. She was employed by the same company as his father, but recently became unemployed. They were married in Pickerington, Ohio, and have one additional child named Maddy Ruckel who is 27 years old. She resides in Columbus, Ohio and works as a waitress at a restaurant. Benjamin speaks with his sister weekly and maintains a close relationship with her.

Benjamin has a close relationship with his parents, and they continue to support him both financially and emotionally since this offense. His mother blames herself for what happened as she has also struggled with mental health problems. This case has brought his parents closer together as they have been working to get the best care possible for Benjamin. Benjamin, unlike many others this Honorable Court sees on a daily basis, is fortunate to have a strong foundational support system committed to navigating Ben's mental illnesses and supporting him

unconditionally.  Attached hereto as Exhibit A is a letter demonstrating their unwavering support.

Benjamin's childhood was fundamentally sound, and his parents raised him the best they could. He would have weekly chores and they traveled for family vacations. Benjamin enjoyed school and was a member of his high school marching band. He also tried to maintain a part-time job in high school.  For all intents and purposes, his upbringing was ordinary into the early part of his high school years. Benjamin started to exhibit mental health issues his senior year of high school, which his parents have since realized in hindsight. A close friend of Benjamin's committed suicide his senior year in high school, and Benjamin was unable to cope. He enrolled in Ohio University, however, he did not go to class. He indicated he was homesick and when he came home, his parents began to notice symptoms of depression and that he would barely leave the house. In 2017, two years later, he enrolled at The Ohio State University and held a job at the Blackwell Inn.  He made the Dean's list His first year at Ohio State. However, when COVID hit his mother became very concerned about his behavior. The fun loving and prank playing son they knew very well became angry and began yelling at his mother specifically.  It was around the same time when there was civil unrest in central Ohio. Benjamin became obsessed with the civil unrest. He would not stop talking or thinking about it to the point he started acting out and being verbally violent towards his mother. His parents then told him he could not stay at home any longer.  Benjamin moved out and they did not hear from him for two months. Eventually, he returned home. He was often by himself and did not leave the house very much at all. He would remain isolated in his room, and have part-time jobs.  His parents knew something was wrong, but felt that he would grow out of it and thought the pandemic confinement contributed to his behavior.

2

Due to his recent mental health diagnosis and issues, Benjamin resides with his parents. Upon learning that Benjamin had been hearing voices for close to 14 months, his parents finally realized what was causing his odd behavior and the reasoning behind his actions towards the church.

Benjamin's parents immediately tried to link him up with different assessments and treatment. He went to several psychologists for assessments. Initially, they all thought he was on narcotics, however, once he was able to attend multiple sessions at New Horizon, they took actions to formulate an attainable treatment plan for Benjamin. He has been given constant treatment since a month after being arrested.

Put simply, the Benjamin standing before this Honorable Court today is not the same Benjamin who burned the church.  Benjamin now spends more time with his parents. He has learned positive coping mechanisms, and is participating in activities he enjoys such as walking. He no longer harbors anger and is no longer obsessive with civil unrest since his treatment.  He shows shame and genuine remorse for his actions. He no longer smokes marijuana and he has been enjoying part-time employment. Benjamin has managed healthy friendships with his co-workers. Unfortunately, because of the medication he takes, part time employment is all he can manage at this time because of the effects it has on his body.

### *Education*

Benjamin graduated from Pickerington North High School in 2015. He was an above average student, and he also participated in the marching band. He was accepted and enrolled into Ohio University in Athens, Ohio.  Benjamin was only there for one semester and did not go to class. He left the university and moved back home after complaining to his parents that there were too many spiders in his dorm room. His parents did not think anything of it at the time. He

3

was then enrolled at The Ohio State University and majored in Marketing. He withdrew after three years there after he started having symptoms related to his mental illness. At the time, he could not finish any type of schoolwork as it caused him debilitating anxiety. He masked his mental health issues due to the stigma associated with them. It was embarrassing to him, and he would do anything so that no one would find out. In hindsight, one can see that he made the Dean's List his first year and it was a steady decline from there. This is all too commonplace for when mental health issues to manifest in young men.

*<u>Employment</u>*

Benjamin applied for disability once he was properly diagnosed and the treatment started working. He was declared disabled in September 2022. He receives a check for $700 a month for his disability for his mental illness. Benjamin tries to work part time as much as possible. When he is at his best, he can work about 15 to 20 hours per week. However, he is limited by the medication he takes as it affects his body. From the date of the offense, it took an abundance of treatment, counseling, and medication to get Benjamin to the point where he could work 15 to 20 hours a week. A few weeks prior to the incident, he was working at the Extended Stay America in Dublin, Ohio. He worked the night shift where he was in the laundry room and managed the front desk. Sometimes he would go two to three days without sleeping. It was at this time when he was alone and working the third shift that his symptoms became amplified.

Prior to the hotel he worked as an Uber Eats driver and before that, while Ohio State, he worked at the Blackwell Inn. In high school, he was a cook at Penn Station and he also worked at Hot Head Burrito in 2017. When Benjamin graduated from high school he was employed as a UPS package handler in Obetz, Ohio. Futhermore, he did the same type of work for Amazon in 2021.

*<u>Mental and Emotional Health</u>*

The most recent mental health diagnosis and treatment are well documented in paragraphs 59 through 75. It is very clear that Benjamin does in fact have a diagnosis of Schizophrenia, first episode in partial remission, and Unspecified Depressive Disorder. The experts all agreed he has a mental health defect, however, they were split on whether or not he knew the wrongfulness of his actions or that he could not appreciate them due to the mental defect. All of the experts also agreed that the Schizophrenia played a part in his actions for this offense.  Unfortunately, his parents did not have the expertise to get him to a doctor or to get him properly diagnosed prior to his criminal act. At his age, the odd behavior that started his senior year of high school and continued afterwards, in hindsight, are textbook symptoms of Schizophrenia. Unfortunately, like many other parents, they thought he was simply going through something because of college and the pandemic.

Benjamin is currently being seen by New Horizons' mental health services. He was initially diagnosed in December 2021 by New Horizons. He has been in active therapy since February 2, 2022. Please see Exhibit B. He has been going two times a month since February 2022. Initially he was not 100% compliant with his medications. However, since May 2022, he has been compliant because he receives monthly injections. In addition to being seen twice a month for therapy, he also attends biweekly appointments with counseling services. They are working to decrease or eliminate barriers created by mental health symptoms in order to have successful employment. In addition, they try to get him towards some type of independence and help  navigating life and legal matters. He also attends psychiatric appointments and participates in case management as necessary. As part of Exhibit B you will see that he  is re-diagnosed each year. On November 16, 2022, they again diagnosed him with Schizophrenia. Pages three through

5

seven of Exhibit B outline the medications that he was on, is on, and will continue to be on. Benjamin has never missed an appointment and continues to try and learn why counseling and therapy is necessary and so important.

### *Physical Condition*

For all intents and purposes, Benjamin does not have any physical health problems except for elevated blood pressure. As noted, this is most likely due to the stress of this case.

### *Substance Abuse*

Benjamin consumes alcohol on rare occasions. He first tried it at the age of 16. He does not report any problems with alcohol. However, the same cannot be said with marijuana. He tried it at the age of 16 and then used it with friends. His use then increased to regular use at the age of 18. Benjamin was self-medicating to help with his depression. Instead of saying something to his parents, or a counselor, he continued to smoke Marijuana to help his feelings of depression and worthlessness. He believed the Marijuana would help clear his mind and he believed it helped with his anxiety. He had a medical Marijuana card that expired in 2023. His counselors indicated that he needed to understand that he should not smoke Marijuana because of the other medications he is taking and what he must focus on. Benjamin had tried Ecstasy and Cocaine as well as other hallucinogens at the age of 19. However, he only experimented with them. Benjamin is very open to receiving alcohol and drug treatment. He fits the stereotype of self-medicating. Fortunately, he only did it with Marijuana versus other hard-core drugs.

### *Guideline Calculations*

All parties are aware that the guidelines are advisory. Defense Counsel acknowledges the base level offense of 24 as well as the three-point enhancement, less the acceptance of

6

responsibility and timely notification. This leaves a total offense level 24 with a criminal history category of I. Benjamin had no criminal record in any way, shape, or form prior to this offense.

It is important for the Court to know that the parties reserved the right to present evidence and argument regarding other aspects of sentencing, including, but not limited to the base level of offense, the scope of the defendant's relevant conduct and the applicability of specific offense characteristics or other upward, or downward, adjustments or departures.

One reason for the above paragraph is because this case was originally charged in Fairfield County Common Pleas Court. Defense Counsel, Benjamin, and the Fairfield County Prosecutor's Office had worked out an agreement to a Guilty Plea and for Benjamin to receive Probation. The parties had also come to an agreement as to a restitution amount. It was known to Defense Counsel from the outset of the investigation that the Federal Government was always looking in and checking into the case. It was made clear to Defense Counsel that the Federal Government may step in and "take the case" so to speak. Defense Counsel forwarded any communications that he had with the Fairfield County Prosecutor's Office to the U.S. Attorney's Office. Defense Counsel also forwarded all of the mental health reports regarding Competency and Not Guilty by Reason of Insanity to the Federal Government upon receipt.

On February 1, 2023, Defense Counsel and Benjamin reached an agreement with the Fairfield County Prosecutor's Office. Attached hereto as Exhibit C, Benjamin was to plead guilty to the Indictment and then that he would receive Community Control/Probation as it was approved by the Pastor of the church. There would be a joint recommendation of Community Control with intensive supervision in regard to mental health treatment. There was also an agreement on a restitution amount of $189,496.40. This agreement was then made known to the U.S. Attorney's Office. Once again, the U.S. Attorney's Office made it clear that they might not

7

agree. Then the Federal Government indicated that they wanted Fairfield County to dismiss the case, and that they were going to move forward with a federal case. It was made clear that the Defendant could enter into a Bill of Information (to which he eventually did) or if he wanted to go to trial with a Not Guilty by Reason of Insanity defense, he would be indicted with a mandatory ten-year fire specification. Since Benjamin is competent, a meeting was held, and it was determined it was in his best interest to enter into an agreement to a Bill of Information.

Since the inception of the Fairfield County Police case, Benjamin was on Pre-Trial Release and complied with every aspect of release until that case was dismissed. He has also been compliant with everything regarding his Federal Pre-Trial Release.

### *Sentencing Memorandum*

The undersigned Counsel has no doubt that this Court is well aware that under the decision of the United States Supreme Court in the case of *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are no longer binding on the Court. Instead, the Court is required to fashion a sentence without the context of 18 U.S.C. §3553(a) and impose a sentence which is sufficient but no greater than necessary to achieve the four purposes of sentencing set forth in §3553(a)(2). In imposing a sentence, the Court must consider all of the factors set forth in §3553(a)(1-7). As the honorable Court is aware 18 U.S.C §3553 (a) reads as follows:

> "(a) Factors to be considered in imposing a sentence. – The court shall impose a sentence sufficient, but no greater than necessary, to comply with the purposes set froth in paragraph (2) of this subsection. The court, in determining the *particular* sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed;
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

8

     (B) to afford adequate deterrence to criminal conduct;
     (C) to protect the public from further crimes of the defendant; and
     (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner," (Emphasis added.)
 (3) the kinds of sentences available;
 (4) the kinds of sentence and the sentencing range established for –
 (5) any pertinent policy statement –
 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
 (7) the need to provide restitution to any victims of the offense.

  The purpose of the Sentencing Memorandum is not to minimize or excuse Benjamin's involvement, or his acknowledgement and acceptance of his responsibility. Rather, it is to provide context and to assist this Honorable Court in fashioning a sentence it deems appropriate. Counsel has already gone over the history and characteristics as they relate to Benjamin, and they are also laid out in the Presentence Report. Defense Counsel submits the mitigating factors proposed under §3553(a) of the following arguments are enough to allow this Court to vary downward to a probationary sentence.

*<u>Nature and Circumstances of the Offense</u>*

  The offense conduct is laid out in the Pre-Sentence Report from paragraphs 12 through 21. Benjamin and Defense Counsel do not have a lot of disagreements with the content contained in these paragraphs. Counsel will note for the Court's attention that individuals who want to burn a church down and get away with it normally do not leave their car parked with the lights on at night so as it can be seen from various directions. Moreover, such individuals do not drive their own vehicle that is registered to them. These facts emphasize the lack of logic in committing the offense and highlight the mental health aspects of the case. As it is pointed out in the final Pre-Sentence Report and noted by Dr. Davis, the inconsistent reasons as to why this occurred is very common for people with this diagnosis. That is demonstrated in the fact that he did not want to

9

talk to law enforcement when he was first questioned, however, without an Attorney he subsequently admitted to the things he could remember.

*Need for Sentence Imposed*

Defense Counsel understands that the Court, must fashion a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment. Counsel submits that a sentence of Probation for Benjamin would reflect the seriousness of his offense, provide a just punishment, and protect the public. The sentence is consistent with Congress's mandate as laid out by the sentencing commission and congressional directives.

The proposed punishment would place severe restrictions on Benjamin and would limit his liberty and freedom. Such restrictions include: intensive outpatient, and potentially inpatient mental health treatment, limited travel without permission, his ability to change jobs without permission, and his ability to change residence without permission. There are also collateral consequences that are carried with a felony conviction that will haunt Benjamin for the rest of his life.

As this Court is well aware, there is no statutory minimum term of imprisonment for a violation of 18 U.S.C. §247(a)(1). The request of probation carries along with it ample authority that this sentence is an adequate punishment in this case.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court addressed the Eight Circuit Court of Appeals' reversal of a district Court's sentencing variance from 30-37 months to three years of probation. The district Court judge stressed at Gall's sentencing hearing that, "probation rather than 'an act of leniency' is a 'substantial restriction of freedom." *Id*. at 44 (internal citations omitted). The Supreme Court agreed, noting that:

> [w]e recognize that custodial sentences are qualitively more severe than probationary sentences of equivalent terms. Offenders on probation are

10

> nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587,151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffen v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); internal quotation marks omitted)). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from , their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3 Most probationers are also subject to individual "special conditions" imposed by the Court.

*Gall*, 522 U.S. at 48.

### *Seriousness of Offense/Deterrence*

If this Court were to impose a below guidelines sentence, the seriousness of Benjamin's actions would not be diminished, and others would learn from repeating his actions. In addressing individual deterrence, Benjamin has no prior record, and but for the unique circumstances surrounding his mental health, and the onset of his Schizophrenia, he most likely would not have offended. Nobody chooses to have a mental illness, it chooses you. Once diagnosed, and after starting treatment Benjamin showed a propensity to not to take his medications. In doing so, the voices continued. He is now on a strict regimen of receiving a monthly shot for his medication and he is no longer hearing or having hallucinations. The Court can mandate that he receive a monthly shot as part of his Probation. Provided that he receives a shot on a monthly basis and with the proper services in place Benjamin will not reoffend. A probationary sentence would also promote general deterrence by putting other citizens on notice that the behavior and acts as committed by Benjamin, will not go unpunished.

### *Need to Protect the Public from Further Crimes*

The nature of Benjamin's criminal conduct is starkly juxtaposed with his law-abiding life. His actions involve a combination of a mental health disorder that went undiagnosed and undetected by family members. Normally, criminal conduct of this type has been seen across the

11

nation involving hate groups, racist groups, and people committing this type of behavior with something or some type of agenda to move forward. That is certainly not the case with Benjamin. The treatment that he started after the criminal conduct shows that the public can be protected from future crimes. The incredible strides that Benjamin has made the past 21 months have been significant. With the intense probationary requirements of this court system, Benjamin's behavior, education, treatment, and adherence to the law will only increase. As outlined in the mental health section above, there is currently a plan in place that is working which would continue to protect the public.

"It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *United States v. Edwards*, 595 F.3d 1004. 1016. N.9 (9th Cir. 2010). Any terms of Probation will be onerous and will certainly be a sufficient punishment for Benjamin. Given his success on Pre-Trial Release over the past 21 months, Benjamin has proven his ability to abide by conditions and Court orders.

The Eighth Circuit and others have repeatedly affirmed post-offense rehabilitation as a basis for downward variance from the guidelines. *United States v. Shy*, 538 F.3d 933, 938 (8th Cir. 2008). As one District Court Judge noted:

> When a defendant has demonstrated extraordinary success at rehabilitation efforts, the need for incarceration is diminished. The history and characteristics of the defendant are changed. The punishment that is 'just' is changed. The need for specific deterrence is lessened. The need for correctional programs such as psychological counseling and drug rehabilitation may be negated. The defendant's isolation and incapacitation are no longer paramount for the protection of society.

*United States v. Hasan*, No. 8:92CR12, 2009 WL 1813650 at *2, n.4 (D. Neb. June 24, 2009).

In Benjamin's situation, there is a demonstrated track record of compliance with treatment, medication, and counseling. Such track record goes towards Benjamin's rehabilitation efforts and as such, a term of incarceration is unwarranted.

### *The Need to Avoid Unwarranted Sentence Disparities*

Concerning the need to avoid unwarranted sentence disparities, Counsel directs the Court's attention to three cases. The first is a federal case out of the District of Minnesota where the defendant, Mr. Abdi, plead guilty to Conspiracy to Commit Arson, a violation of 18 U.S.C. §371 and §844(i). *United States v. Mohamed Hussein Abdi*, No. 20-CR-113 DSD/BRT (D. Minn. Feb. 3, 2022). Factually, Mr. Abdi conspired with others to set a school on fire surrounding the George Floyd protests on May 28, 2020. *Id* at 11. He broke glass out of a door and once inside, poured accelerant on the floor and into a trashcan. *Id*. Mr. Abdi then started a fire in the trashcan and tipped it over into the accelerant he had poured onto the floor thus starting the fire. *Id*. The District Court Judge gave him Probation based on his age (20), lack of record, and the complexities surrounding the civil protests and the death of George Floyd. Andrew Mark Miller, *Man who Tried to Burn Minnesota School During BLM Riots Gets Probation,* Fox News (Feb. 5, 2022). Mr. Abdi was placed on five years of probation and was ordered to pay restitution. *Id*. In this case, Mr. Abdi showed no issues with mental health. *Id*.

In a state case in Rockford, Illinois, 29 year old Edward Walsh admitted to setting a church on fire stating that he burnt it down to get the attention of Hollywood. Anthony Ferretti, *Rockford Man Sentenced for Setting Church on Fire*, WIFR (Jul. 23, 2021). It was found that Mr. Wash had mental health issues that contributed to the arson. *Id*. The State Court Judge gave Mr. Wash Probation where:

> "Judge Schafer concluded that Probation for Wash is best because while arson is dangerous and people along with firefighters could have been hurt in the fires, she knew

> Wash has the ability to stay out of trouble and wanted him to succeed to keep the community safe. Judge Schafer agreed that a Probation Officer should hold Wash more accountable to make a change and require him to take his medications. However, the motivation to seek help has to come from Wash, not Gary or herself."

*Id*.

In a 2013 state case in North Carolina, Harley Fulp, who was 18 years old at the time, confessed to an arson charge regarding a Methodist church. The Reidsville Review, N.C., *Probation for N.C. Church Arsonist Infuriates Fire Marshal*, Firehouse (Dec. 23, 2013). He received three years of supervised Probation, 100 hours of community service, and was ordered to help install the new roof on the church once it was constructed. *Id*. Mr. Fulp did not have any mental health issues. *Id*.

As such, Defense Counsel submits a probationary sentence in the instant case would be commensurate with the need to avoid disparate treatment among similarly situated defendants, especially given the mental health aspect of Benjamin's case.

### *Restitution*

Counsel objected to paragraph 102 of the final Pre-Sentence Report with regard to the restitution amount. The Probation Officer has provided some back up to the incurred expenses above and beyond what insurance paid for. From the correspondence that was received from the County Prosecutor's Office that has already been attached, as well as conversations with the Assistant U.S. Attorney on the case, there may be some items that have been added or repaired that were more of a wish list, so to speak, for the church. Counsel believes that the restitution amount hopefully can be agreed to by the time of the Sentencing Hearing. The Defendant is responsible for restitution. However, Defense Counsel would argue that Benjamin is responsible for $65,189.76 as that is the out of pocket costs the Church incurred. In Exhibit C, the Fairfield County Prosecutor's Office believed the total restitution amount was $189,496. In State Court,

14

restitution cannot be paid to an insurance company. To receive restitution, an insurance company must sue a criminal defendant civilly. Furthermore, there is no direct language in 18 U.S.C. §3663(A) that makes an insurance company a secondary victim. Individuals and businesses carry insurance for this exact reason. It is unfair to allow an insurance company to obtain premiums and secondary restitution on a federal case versus on a state case.

*Conclusion*

Benjamin has demonstrated his worthiness of a probationary sentence. He has acknowledged his wrongdoing, and has accepted responsibility for his actions. It has been demonstrated to the Court that the sentence requested by Defense Counsel would not demean the seriousness of the offense. Rather, it would accomplish the principles and purposes of sentencing as it would serve both specific and general deterrence for future crime.

As such, Defense Counsel respectfully requests a probationary sentence of five years. In addition, Benjamin will comply with any and all aspects of probationary requirements, especially those designated for mental health treatment.

Respectfully submitted,

/s/ *Mark C. Collins*
**MARK C. COLLINS (0061207)**
**KAITLYN C. STEPHENS (0095589)**
COLLINS & STEPHENS CO., LPA
150 E. Mound St., Suite 308
Columbus, Ohio 43215
(614) 443-3100   (614) 413-3902 – Fax
mark@mcollinslaw.com
kaitlyn@mcollinslaw.com
*Counsel for Defendant Benjamin D. Ruckel*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2023, I electronically filed the Sentencing Memorandum with the Clerk of Courts using the CM/ECF System, which will send notifications of such filing to the following: **Brian Martinez, Esquire.**

/s/ *Mark C. Collins*
**MARK C. COLLINS (0061207)**


/s/ *Kaitlyn C. Stephens*
**KAITLYN C. STEPHENS (0095589)**